UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA LYNN SHEPARD,

    Plaintiff,                                          Hon. Ellen S. Carmody

v.                                                    Case No. 1:08-CV-1196

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On April 20, 2009, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred the matter to this Court. (Dkt. #15).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner denied Plaintiff's applications for benefits. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision. (Tr. 19). She successfully completed high school and worked previously as a sales attendant, laborer, and cleaner. (Tr. 19, 184).

Plaintiff applied for benefits on March 28, 2006,[1] alleging that she had been disabled since August 2, 2002, due to asthma, allergies, sinus problems, high blood pressure, diabetes, epilepsy, bi-polar disorder, "bad nerves," attention deficit disorder, schizophrenia, and headaches. (Tr. 183, 218). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 94-128). On November 15, 2007, Plaintiff appeared before ALJ William King, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 24-77). In a written decision dated April 24, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 9-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-3). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] Plaintiff filed three previous applications for benefits, between 1995 and 2005, all of which were denied. (Tr. 9).

Plaintiff's insured status expired on September 30, 2006. (Tr. 9-10). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On April 9, 2003, Plaintiff participated in a pulmonary function study the results of which were "normal." (Tr. 299).

On August 13, 2004, Plaintiff was examined by Dr. Gopal Bedi. (Tr. 398-400). Plaintiff reported that she was experiencing anxiety and depression. (Tr. 398). The results of a mental status examination were unremarkable. (Tr. 399). Plaintiff was diagnosed with adjustment disorder with depression and her GAF score was rated as 55.[2] (Tr. 399). Plaintiff was prescribed Prozac and Xanax. (Tr. 399).

On December 1, 2004, Plaintiff was examined by Dr. Bedi. (Tr. 396). Plaintiff was "quite upbeat" and reported that she was not experiencing any depression or medication side effects. (Tr. 396). On February 23, 2005, Plaintiff reported that she was "feeling fine." (Tr. 393). Dr. Bedi continued Plaintiff on her current medication regimen. (Tr. 393).

On April 20, 2005, Plaintiff participated in a nerve conduction examination of her left wrist, the results of which were "normal." (Tr. 269-70).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Treatment notes dated May 18, 2005, indicate that Plaintiff "reported significant improvement in her emotional state." (Tr. 390). Following an August 18, 2005 examination, Dr. Bedi reported that Plaintiff "appeared quite relaxed and was not exhibiting any evidence of depression." (Tr. 388).

On October 7, 2005, Plaintiff participated in a dexa scan,[3] the results of which revealed that Plaintiff suffers from osteopenia.[4] (Tr. 298).

On December 6, 2005, Plaintiff participated in a consultive examination conducted by Erin Campbell-Brooks, M.A., Limited Licensed Psychologist. (Tr. 289-92). Plaintiff reported that she was disabled due to asthma, allergies, sinus problems, high blood pressure, possible diabetes, bipolar manic depression, osteoarthritis, attention deficit disorder, memory problems, digestive problems, acid reflux, left wrist problems, and anemia. (Tr. 289). The results of a mental status examination were unremarkable and Campbell-Brooks reported that Plaintiff was "exaggerating her symptoms." (Tr. 290-92). Plaintiff was not diagnosed with any impairment and her GAF score was rated as 63.[5] (Tr. 292).

On June 4, 2006, Plaintiff participated in a consultive examination conducted by Anne Kantor, M.A., Limited Licensed Psychologist. (Tr. 315-21). Plaintiff reported that she was

---

[3] Dexa stands for "dual energy x-ray absorptiometry." *See* Osteopenia Treatment, *available at*, http://www.osteopenia3.com/dexa-scans.html (last visited on November 23, 2009). A dexa scan is "the most commonly used test for measuring bone mineral density." *Id.*

[4] Osteopenia refers to a condition marked by a deficiency of bone; the presence of less than the normal amount of bone. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* O-121 (Matthew Bender) (1996). Osteopenia is distinct from, and less severe than, osteoporosis. *See* Osteopenia - Overview, *available at*, http://www.webmd.com/osteoporosis/tc/osteopenia-overview (last visited on November 23, 2009).

[5] A score of 63 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

disabled by "a lot of different things. . .a whole bunch of stuff. . .asthma. . .high blood pressure, diabetes, seizures, and I don't know what all else." (Tr. 315). Plaintiff also reported that she suffered from bipolar disorder and attention deficit disorder, but Kantor reported that "[Plaintiff] did not report nor did I observe signs and symptoms that lead to those diagnoses." (Tr. 320). Kantor reported that Plaintiff was "irritable and minimally cooperative throughout the evaluation." (Tr. 316). The results of a mental status examination were unremarkable. (Tr. 317-20). Plaintiff was diagnosed with a mood disorder and her GAF score was rated as 55. (Tr. 320).

On June 8, 2006, Plaintiff was examined by Dr. Bedi. (Tr. 387). Plaintiff reported that she was "functioning well." (Tr. 387). The doctor reported that Plaintiff "appeared calm and composed." (Tr. 387).

On June 29, 2006, Dr. Kenneth Kobes, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 345-58). Determining that Plaintiff suffered from a mood disorder and a personality disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.08 (Personality Disorders) of the Listing of Impairments. (Tr. 346-54). Dr. Kobes determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 355). Specifically, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 355).

Dr. Kobes also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and

6

memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 359-62). Plaintiff's abilities were characterized as "moderately limited" in eight categories and "markedly limited" in two categories. (Tr. 359-60). With respect to the remaining 10 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 359-60).

On July 2, 2006, Plaintiff participated in a consultive examination conducted by R. Scott Lazzara. (Tr. 305-09). Plaintiff reported that she has suffered from epilepsy "her whole life," but did not know "how many seizures she has had or when her last seizure was." (Tr. 305). The doctor reported that during the physical examination, Plaintiff provided "minimal effort" and "was uncooperative." (Tr. 306). The results of the physical examination were unremarkable. (Tr. 306-08). Dr. Lazzara concluded that Plaintiff suffered from a seizure disorder and asthma, but noted that "her most significant clinical ailment is her anxiety and depression." (Tr. 309).

On August 21, 2006, Plaintiff reported to Dr. Bedi that "she has not been having mood swings and that the medication is keeping her calm." (Tr. 385). On November 13, 2006, Plaintiff reported to Dr. Bedi that "she is functioning well as long as she stays on her current medications." (Tr. 382). Treatment notes dated June 11, 2007, indicate that Plaintiff's "mood was normal" and that she "had been taking her medications regularly." (Tr. 377). On September 6, 2007, Dr. Bedi reported Plaintiff's GAF score as 65 (Tr. 371-74).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from a mood disorder, personality disorder, low back pain, asthma, and obesity, severe impairments that whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of

Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-13). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience,

---

[6] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five of the disability determination procedure, Plaintiff bears the burden of proof through step four, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through the date her insured status expired, Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can sit and stand/walk for six hours each during an 8-hour workday; (3) she can occasionally climb stairs; (4) she can frequently balance, stoop, kneel, crouch, and crawl; (5) she can perform duties that do not require sharp distance vision; (6) she must avoid concentrated exposure to cold and pulmonary irritants; (7) she must avoid exposure to hazardous conditions; (8) she can perform work involving tasks which can be learned in less than 30 days, involving no more than simple work-related decisions, and having few workplace changes; and (9) she cannot work in close proximity
to others. (Tr. 15). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 27,200 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 66-74). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number). The vocational expert further testified that if Plaintiff were further limited in that she could only stand for two hours during the workday and required a sit/stand option, there still existed approximately 4,900 jobs that she could perform. (Tr. 74-75). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

As previously noted, Plaintiff is proceeding in this matter without benefit of counsel. Accordingly, the Court has interpreted Plaintiff's pleadings indulgently, as required by law. In response to the Court's Order directing the parties to submit briefs in support of their respective positions, Plaintiff submitted a four sentence note in which she simply asserts that her application for benefits was "wrongfully denied." (Dkt. #14). Plaintiff has identified no specific error in the ALJ's analysis or reasoning and, moreover, has failed to articulate any rationale that would support a ruling in her favor in this Court. While the Court must read Plaintiff's pleadings indulgently, it cannot act as counsel for Plaintiff and attribute to Plaintiff arguments which do not find their genesis in Plaintiff's pleadings. Nevertheless, the Court has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any defects or deficiencies. This review revealed nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court does not doubt that Plaintiff's impairments impose upon her some degree of discomfort and limitation, the ALJ's determination that such are less than disabling in severity is supported by substantial evidence.

### CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: March 30, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge